**O'CONNOR LAW GROUP, P.C.**
Mark O'Connor, Esq. (SBN 157680)
Larry S. Castruita, Esq. (SBN 279263)
384 Forest Ave., Suite 17
Laguna Beach, CA 92651
Tel: (949) 494-9090 | Email: hello@teamolg.com

**WIRTZ LAW APC**
Richard M. Wirtz (SBN 137812)
4370 La Jolla Village Dr., Suite 800
San Diego, CA 92122
Tel: (858) 259-5009 | Email: rwirtz@wirtzlaw.com

**REALLAW APC**
Michael J. Hassen, Esq. (SBN 124823)
1981 N. Broadway, Suite 280
Walnut Creek, CA 94596
Tel: (956) 359-7500 | Email: mjhassen@reallaw.us

Attorneys for Plaintiff:       DANIEL AARON HOROWITZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DANIEL AARON HOROWITZ, individually and on behalf of all others similarly situated**, <br><br> Plaintiff, <br><br> vs. <br><br> **TESLA MOTORS, INC., a Delaware Corporation**, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. **BREACH OF CONTRACT;** <br> 2. **VIOLATION OF THE UNFAIR COMPETITION LAW (California Business & Professions Code §17200);** <br> 3. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING** <br> 4. **VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT (California Civil Code §1760, *et seq.*) (Injunctive Relief)** <br><br> **DEMAND FOR JURY TRIAL** |

///

///

-0-

*Horowitz v. Tesla* - CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff DANIEL AARON HOROWITZ brings this Class Action Complaint and Demand for Jury Trial and alleges as follows against Defendant TESLA MOTORS, INC., a Delaware Corporation. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and as to all other matters upon information and belief, including investigation conducted by his counsel.

**DEMAND FOR JURY TRIAL**

1.      Plaintiff on behalf of himself and other similarly situated, hereby demands trial by jury in this action pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**THE PARTIES**

2.      Plaintiff DANIEL AARON HOROWITZ (hereinafter "[Mr.] Horowitz" or "Plaintiff") is an individual residing in Lafayette, County of Contra Costa, and State of California.

3.      Defendant TESLA MOTORS, INC. (hereinafter "Tesla" or "Defendant") is and at all relevant times was, a Delaware Corporation registered to do business in the State of California with its registered office in the City of Fremont, County of Alameda, and State of California.

4.      Additionally, TESLA engages in the marketing, supplying, distribution and retail sales of automobiles to the public at large through both its website a broad network of sales facilities across the United States.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. §1332(d)(2), which provides for original jurisdiction in the federal courts over any class action in which a member of the plaintiff class is a citizen of a State different from the State citizenship of any defendant, and the amount in controversy exceeds the sum of $5,000,000.00 exclusive of interests and costs. Here, there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and

1  costs and there is minimal diversity between Plaintiff and Defendant. Additionally, this Court also

2  has supplemental jurisdiction over the set forth state law claims pursuant to 28 U.S.C. §1367.

3       6.     This Court has personal jurisdiction over Tesla because Tesla conducts substantial

4  business in this judicial district, thereby purposely and intentionally availing itself of the benefits

5  and protections of this district when placing motor vehicles into the stream of commerce within

6  California and the United States. Personal jurisdiction over Tesla is foreseeable, fair, and proper.

7       7.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391. Tesla transacts

8  substantial business in this district with regularity and it is subject to personal jurisdiction in this

9  district. Additionally, Tesla advertises and markets its products in this district, and has received

10  substantial revenue and profits from its sales and leasing of motor vehicles in this district. Thus, a

11  substantial part of the events and/or omissions giving rise to the present claims occurred in within

12  this district. Therefore, venue is proper.

13      8.     All acts of corporate employees as alleged were authorized or ratified by an officer,

14  director, or managing agent of the corporate employer.

15

16                        **COMMON FACTUAL ALLEGATIONS**

17      9.     Tesla is manufacturer and direct to consumer retail seller of electric vehicles

18  throughout the country. Tesla is "vertically integrated"; meaning it, unlike traditional

19  manufacturers of motor vehicles does not sell through separate entities (dealerships) but rather acts

20  as its own distributor and retail sales arm. It has only 4 base model vehicles; the S, 3, X and Y.

21  Each has various options or configurations of features such as interior colors, trim and so forth.

22      10.    Tesla, by virtue of being "vertically integrated" knows exactly how many vehicles

23  are being ordered by consumers and the exact composition of each individual vehicle as ordered

24  by each consumer. Thus, Tesla can plan its manufacturing, the features of each individual vehicle

25  and when and if certain features or "options" will be available to each individual who orders their

26  car. In this way Tesla will always know and be capable to inform consumers when any particular

27  feature, option or characteristic of one of its 4 base models (The S, 3, X and Y) will either be

28  discontinued or not available.

11.     In order to purchase one of its vehicles, a consumer must visit Tesla's website to begin their order of a desired vehicle.

12.     On the website a customer will select the model (e.g., Model S, Model 3, Model X, Model Y) and will select various options including items such as the base vehicle (typically delineated by the size of the battery and range capability) exterior color, wheels, interior décor, number of seats, Autopilot, Self-Driving Capability, and charging options.

13.     Once the order is complete, and a customer has paid an order fee of one hundred dollars ($100.00), Tesla will send a Motor Vehicle Order Agreement ("MVOA") which states that the order was "placed electronically with accepted terms" and contains a total price not including taxes and governmental fees.

14.     Consumers reasonably rely on the stated price in Tesla's online order form and that the terms of the agreement, specifically the features ordered for the vehicle and the price, will not change.

15.     Despite promising to sell cars to consumers at certain prices Tesla has rather engaged in the practice of unilaterally sending modified Motor Vehicle Order Agreement contracts to customers, such as Plaintiff, who have already entered into a contract with Tesla for a model of vehicle with certain features and options. These "modified" orders, which appear and are sent to consumers fully executed, contain different terms, most notably increased prices for the same base model vehicle (or a lesser base model) and increased process for the same features (such as auto pilot). Tesla engaged in exactly this conduct with Plaintiff Horowitz and, further, informed Plaintiff that the changes were necessary because the model he ordered was no longer available; in essence Tesla stated as a fact that the vehicle the customer ordered was no longer available even though Tesla knew, when Horowitz ordered the vehicle, what options were available. However, the truth is that Tesla changed nothing other than the price, increasing it unilaterally and fraudulently. And Tesla strong-armed consumers into changing their orders by simply telling them the originally ordered vehicle would not be available or would not be produced. In essence, Tesla determined a way to force consumers to alter their orders on the pretext of non-available options and enforce a price increase on other features that remained the same (such as the base vehicle or

auto pilot). Tesla simply refused to actually manufacture the vehicle the consumer ordered, and for which Tesla took the order, in order to increase the price on already ordered vehicles.

16.     Plaintiff, and other similarly situated persons, do not sign, click, or execute in anyway the modified contracts. Tesla merely enforces the new terms on its existing customers with existing contracts.

17.     Not only do the new contracts contain configurations not agreed to by the customer, but they also contain a higher price.

18.     Tesla gave only two options: pay the higher price for a different model or cancel the contract.

19.     Tesla knows and understands that it lacks any real competition and that its customers lack any alternatives to complete their vehicle orders in hopes that consumers will give in to the changed configurations and price increases.

20.     Plaintiff and all classes set forth herein now seek to enforce their contracts with Tesla for the originally agreed-upon configuration and price.

## **ALLEGATIONS SPECIFIC TO PLAINTIFF**

21.     Plaintiff brings this action individually for himself and on behalf of all persons who entered into a contract for the purchase of a Tesla Vehicle where the Tesla unliterally changed their configurations and increased the purchase price after the execution of the contract.

22.     On or around October 7, 2020, Plaintiff entered into a binding contract with Defendant whereby Defendant provided a "Motor Vehicle Order Agreement" ("MVOA") (the "October Agreement") with "electronically accepted terms" setting forth the price for the purchase of a 2020 model year Tesla Model X (hereinafter "[the] vehicle"). Tesla assigned an order number "RN113924080" to the contract. Said contract is attached hereto as Exhibit "A".

23.     The delivery date was to be December 28, 2020, which coincided with the expiration of Plaintiff's previous lease of a different Tesla vehicle.

24.     The particular configuration of the vehicle on the October contract contained, among other things, a selection of a "Model X Long Range Plus", Midnight Silver Metallic

Exterior color, 20" Silver Wheels, All Black premium Interior with Figured Ash Wood Décor, Six Seat Interior, Auto Pilot, Full Self Driving Capability, and Pay-as-you-go Supercharging.

25.     The total price of the vehicle selected by Plaintiff was $97,290.00.

26.     As of the date of the October Agreement, there was no Vehicle Identification Number ("VIN") attached to the Vehicle.

27.     The first page of the October Agreement sets forth an order fee of $100.00 which was paid by Plaintiff on that date.

28.     Plaintiff's contract contains the words "Order Placed with electronically accepted terms."

29.     Beginning in or about December of 2020 Plaintiff made multiple documented attempts to contact Tesla to inquire about the delivery of his new vehicle as he was receiving emails from Tesla regarding the expiration of his previous lease on December 28, 2020. These attempts were ignored by Tesla.

30.     Disregarding all communications from Plaintiff, Tesla sent Plaintiff notice that his lease would "mature"[1] on December 28, 2020; a fact already known to Plaintiff having pointed this out to Tesla. Tesla then gave Plaintiff only one viable option; to extend the lease. But Tesla demanded a lease payment that was the same as the original lease despite the fact that Plaintiff was, at that point, then leasing a vehicle with over 37,000 miles. Essentially Tesla demanded a "New" vehicle lease amount for a used vehicle having failed to provide the new vehicle Plaintiff ordered. With no other options and no one from Tesla contacting Plaintiff regarding his new vehicle, Plaintiff was forced to pay to extend his existing lease.

31.     On February 23, 2021, Plaintiff sent a letter detailing the issues set forth herein to Tesla's General Counsel. Tesla ignored this communication.

32.     On May 19, Plaintiff sent a follow up letter to Tesla's General Counsel detailing the issues set forth herein, with a request to preserve certain evidence.

///

///

---

[1]  Tesla uses the word "mature" in the place of "expire" when referring to the end date of its leases.

33.     On May 24, 2021, Tesla unilaterally sent Plaintiff a new MVOA with the exact same order number RN113924080 for a Model X Tesla which was different in configuration specifically the difference in configuration was:

    a.  Instead of a Model X Long Range **Plus**, the vehicle was changed to a lesser Model X Long Range[2];

    b.  The price of the base vehicle - the Model X Long Range (not Plus) was increased $10,000.00 from $79,990.00 to $89,990.00, even though the vehicle was a **lesser model** base vehicle because it had a decreased range capability;

    c.  Instead of 20" Silver Wheels, they were now 20" Cyberstream Wheels;

    d.  Instead of a Figured Ash Decor, it was now an Ebony Decor;

    e.  It added a Yoke Steering Wheel;

    f.  The price of the Full Self-Driving Capability was increased from $8,000.00 to $10,000.00; and,

    g.  The "Order Fee" of $100.00 did not appear on the May 14, 2021, MVOA.

34.     The total price now demanded by Tesla was $109,190.00, an increase of $11,900.00 for a vehicle with lesser range and capability and a few changes in color.

35.     Plaintiff did not and does not accept the changed configuration and demands for Tesla to honor its agreed upon price of $97,290.00.

## CLASS ALLEGATIONS

### *Nationwide Class*

36.     Plaintiff brings this class action on behalf of himself and on behalf of the Class Members of the Nationwide Class. Plaintiff is informed and believes that all members of the Nationwide Class entered into a MVOA with Tesla for a specific configuration and price of a new vehicle and that each received a unilateral second contract with a higher price and possible changes to their selected configurations.

---

[2] According to *Car and Driver* the Tesla Model S "Long Range" has a range capability of 373-miles while the "Long Range Plus" has a 390-mile range capability. Therefore, Tesla both increased the price by $10,000.00 and decreased the range capability to a lesser model.

37.     Plaintiff brings this lawsuit as a class action on behalf of himself and similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.

38.     Plaintiff brings this class action on behalf of himself and all other similarly situated members of a proposed Nationwide Class, defined as follows:

**All individuals in the United States Who Entered into a Motor Vehicle Order Agreement (either a sale or a lease) and Later Received a New Agreement Containing a Higher Price and/or different configuration of options for essentially the same or lesser vehicle or for an altered vehicle configurations when the original configuration was available.**

*California Subclass*

39.     Plaintiff brings this class action on behalf of himself and on behalf of the Class Members of the California Subclass. Plaintiff is informed and believes that all members of the California Subclass are California residents who entered into a MVOA with Tesla for a specific configuration and price of a new eclectic vehicle and that each received a unilateral second contract with a higher price and possible changes to their selected configurations.

40.     Plaintiff brings this lawsuit as a class action on behalf of himself and similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.

41.     Plaintiff brings this class action on behalf of himself and all other similarly situated members of a proposed California Subclass, defined as follows:

**All individuals in the California Who Entered into a Motor Vehicle Order Agreement (either a sale or a lease) and Later Received a New Agreement Containing a Higher Price and/or different configuration of options for essentially the same or lesser vehicle or for an altered vehicle configurations when the original configuration was available.**

///

42.     Excluded from both the Nationwide Class and the California Subclass are: 1) Tesla, any affiliated parent or sister company, any entity or division in which Tesla has a controlling interest, its legal representatives, officers, directors, assigns, and successors; 2) the Judge to whom this case is assigned and the Judge's staff; 3) governmental entities; and, 4) claims for personal injuries resulting from the facts alleged herein. Plaintiffs reserve the right to amend the class definitions if discovery and further investigation reveal that the Class should be expanded, divided into subclass, or modified in any other way.

43.     Plaintiff reserves the right to amend the classes, and to add subclasses, if discovery and further investigation reveals such action is warranted.

44.     **Numerosity:** Although the exact number of the Nationwide Class and the California Subclass Members is uncertain and can only be ascertained through appropriate discovery, Plaintiff believes and, on that basis, alleges that thousands of members of both classes have been entered into a MVOA only to later receive a new unilateral MVOA with altered terms and price, so the number of the Nationwide Class and the California Subclass Members is great enough that joinder is impracticable. The disposition of the claims of these class members in a single action will provide substantial benefits to all parties and to the Court. The class members are readily identifiable from information and records in Tesla's possession, custody, or control.

## **TESLA'S ARBITRATION PROVISION**

45.     All relevant MVOA's of each Class Member contains an arbitration provision that is unenforceable as its only provision to opt-out creates a contractual impossibility.

46.     The arbitration provision states:

> You may opt out of arbitration within 30 days after signing this
> Agreement by sending a letter to: Tesla, Inc.; P.O. Box 15430;
> Fremont, CA 94539-7970, stating your name, Vehicle Identification
> Number, and intent to opt out of the arbitration provision.

47.     The MVOA's are a contract to order a vehicle. Thus, at the time the contracts are entered into and for a period more than thirty (30) days thereafter, Plaintiff and any Class Member

1  could not have had possession of a VIN in order to satisfy the preceding condition. The arbitration

2  provision is designed to frustrate any consumes ability to exercise the opt out provision. However,

3  Plaintiff has sent a letter requesting to opt out of the arbitration provision without a VIN.

4      48.  **Typicality:** The claims of the representative Plaintiff are typical of the claims of

5  the Class in that the representative Plaintiff, like all Class Members, entered into a binding

6  agreement with Tesla for a specific configuration of vehicle at a specific Price only to have Tesla

7  later unilaterally and without class members agreement altered the material terms of their

8  agreement including the configuration of the vehicle and the price. In each case all Plaintiff and

9  all class members deposited monetary funds in consideration of their binding agreements with

10  Tesla. Some class members actually paid the higher price for a car they did not select, and others

11  were prevented from purchasing the vehicles at the higher price and were not given refunds of

12  their deposits. The representative Plaintiff, like all potential Class Members, has been damaged by

13  Defendant's misconduct monetarily and that they did not receive the benefit of the contract entered

14  into with Tesla. Furthermore, the factual bases of Defendant's misconduct are common to all

15  potential Class Members and represent a common thread of fraudulent, deliberate, and negligent

16  misconduct resulting in injury to all potential Class Members, including Plaintiff.

17      49.  No violations alleged in this complaint are contingent on any individualized

18  interaction of any kind between potential Class Members and Tesla. Rather, all claims in this

19  matter arise from the identical acts, omissions, concealments, and representations of Tesla.

20      50.  **Existence and Predominance of Common Questions of Fact and Law:** There

21  are common questions of law and fact as to the potential Class Members that predominate over

22  questions affecting only individual members, including, but not limited to:

23          a.  whether Tesla engaged in unlawful, unfair, or deceptive business practices in

24          contracting for the sale or the sale of Class Vehicles to Plaintiff and other

25          potential Class Members;

26          b.  whether Tesla made false misrepresentations or omitted and concealed material

27          facts with respect to the Class Vehicles it sold to potential Class Members;

28          ///

c. whether the Tesla's increase in price benefitted Tesla to the detriment of the Class Members;

d. whether Tesla beached its initial contract with Class Members by unilaterally altering the material terms before performing on any obligations therein and without mutual agreement;

e. whether Tesla violated California Business and Professions code Section 17200, *et seq*. with respect to the California Subclass;

f. whether Tesla's unlaw, unfair and/or deceptive practices harmed Plaintiff and potential Class Members; and,

g. Whether Tesla violated California's Consumer's Legal Remedies Act with respect to the California Subclass.

51. Plaintiff's claims are not only typical of all potential Nationwide and California Class Members, but they are also essentially identical.

52. All of Plaintiff's claims and all potential Nationwide and California Class Members' claims are based on the exact same legal theories. Plaintiff's damages and payer for relief also mirror the damages suffered by all potential Nationwide and California Class Members - viz., an injunction for specific performance on the original contracts, and monetary damages in the form of a refund of deposits, and/or a refund of the difference of the original contracts and the unilaterally altered contracts. Further, Plaintiff has no interest antagonistic to, or in conflict with, those of the Class.

53. **Adequate Representation:** Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member. Plaintiff has retained attorneys experienced in the prosecution of class actions and consumer claims similar to the present matter. Plaintiff intends to prosecute this action vigorously.

54. **Predominance and Superiority:** Plaintiff and the potential Class Members have all suffered and will continue to suffer harm. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most potential Class Members would find the cost of litigating their claims prohibitively high and would therefore have

no effective remedy at law. Because of the relatively small size of the individual potential Class Members' claims, it is likely that only a few potential Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, potential Class Members will continue to incur damages, future consumers will enter into contracts with Tesla which Tesla has no intention to perform on, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

55.     In sum, Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent himself and the lass, common questions will predominate, and there will be no unusual manageability issues.

## **FIRST CLAIM FOR RELIEF**

### **Breach of Contract**

*(On Behalf of Plaintiff and Members of the Nationwide Class and the California Subclass)*

56.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

57.     Plaintiff and the Nationwide Class entered into a valid contract with Defendant for the purchase of Tesla vehicles. Most importantly, Plaintiff and the Nationwide Class agreed to a specific contract price for the purchase of specific configurations.

58.     The contracts of adhesion drafted by Defendant states: "Order Placed with electronically accepted terms."

59.     Plaintiff and the Nationwide Class paid a deposit to purchase the vehicles and, in reliance on Defendant honoring the contract price.

60.     In further reliance, Plaintiff and the class members did not purchase vehicles from other manufactures based on their reliance on the contracts.

61.     Defendant breached its contract with Plaintiff and the Nationwide Class by increasing the price of the vehicles in violation of the contract. Defendant also anticipatorily breached the contract by indicating that if Plaintiff and all Nationwide class members did not pay

the higher price for the altered vehicles, they would simply not receive their benefit of the bargain and would not receive their deposits back.

62.   Plaintiff and the Nationwide Class are now damaged as a result of Defendant's breach and anticipatory breach. In order to mitigate their losses, Plaintiff and the Nationwide Class will be forced to pay for the price increase.

63.   Because no comparable products to the Tesla vehicles which were selected by the Class Members currently exist, there is no adequate remedy for Plaintiff and the Nationwide Class under the law. As such, Plaintiff and the Nationwide Class seek specific performance under the initial contracts that existed prior to the unilaterally changes contracts with higher prices and different terms.

## SECOND CLAIM FOR RELIEF

### Violation the Unfair Business Practices Act - Cal. Bus. & Prof. Code §§17200 *et seq.*

### *(On Behalf of Plaintiff and Members of the California Subclass)*

64.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

65.   Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the Unfair Business Practices Act - Cal. Bus. & Prof. Code §§17200 *et seq*. ("UCL"). Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A causal connection exists between Tesla's business practices and the alleged harm in that Tesla's conduct caused or was likely to cause substantial injury to Plaintiff and potential California Subclass Class Members.

### Tesla's Unfair Business Acts and Practices

66.   Tesla's acts, omissions, misrepresentations, and practices as alleged herein constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits

attributable to such conduct. There were reasonably available alternatives to further Tesla's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

67.    Plaintiff's and potential California Subclass Members' injuries are: 1) substantial; 2) not outweighed by any countervailing benefits to consumers or competition; and, 3) not injuries that consumers themselves could reasonably have avoided.

68.    Here, Tesla's conduct has caused and continues to cause substantial injury to Plaintiff and potential California Subclass Members. Plaintiff and potential California Subclass Members have suffered injury in fact due to Tesla's decision to knowingly enter into contracts that it states are binding, only to unilaterally alter the material terms of those contracts including increasing the price. Tesla's conduct has caused substantial injury to Plaintiff and potential California Subclass Members.

69.    Tesla's conduct as alleged herein solely benefits Tesla while providing no benefit of any kind to the Plaintiff or potential California Subclass Members. Such deception utilized by Tesla convinced Plaintiff and potential California Subclass Members that the Class Vehicles were of a certain value and price to induce them to pay deposits and rely on the contracts. Tesla has unfairly profited from or intends to unfairly profit from the unilateral price increases to all California Subclass Members The injury suffered by Plaintiff and the members of California Subclass is not outweighed by any countervailing benefits to consumers.

70.    The injuries suffered by Plaintiff and California Subclass Members are not injuries that they could reasonably have avoided. After Tesla falsely represented the configuration and price of the vehicles, Plaintiff and potential California Subclass Members suffered injury in fact due to their reliance and subsequent purchase and/or lease of the Class Vehicles. Tesla failed to take reasonable steps to negotiate in good faith with Plaintiff and potential California Subclass Members to mutually consent to the new terms. As such, Tesla leveraged its position of power and its superior (and singular) knowledge to deceive Plaintiff and potential California Subclass Members to enter into contract for and/or purchase the California Subclass Vehicles. The injury

suffered by Plaintiff and potential California Subclass Members are not injuries that they could reasonably have avoided.

71.     Tesla's conduct violated the "unfair" prong of §17200.

### Tesla's Fraudulent Business Acts and Practices

72.     Tesla's fraudulent business acts and practices were likely to and did deceive members of the public.

73.     Plaintiff and potential California Subclass Members were not only likely to be deceived, but in fact were deceived by Tesla. Plaintiff and potential California Subclass Members agreed to purchase or lease Class Vehicles end entered into enforceable contract that could only have been altered by mutual consent. Tesla, then to its own benefit, knowingly violated those contracts by unilaterally changing the terms and increasing the price. Plaintiff's and potential California Subclass Members' reliance upon Tesla's deceptive statements is reasonable due to the unequal bargaining power between Tesla and Plaintiff and potential Class Members as well as Tesla's superior knowledge. Plaintiff and potential California Subclass Members could not have known that Tesla would breach their contracts. It is likely that Tesla's fraudulent business practice would deceive members of the public at large.

74.     Tesla deceived Plaintiff and California Subclass Members by falsely representing that (1) placing a vehicle order would secure the price of the vehicle, and/or (2) that vehicles "configurations" need to be altered at which time Tesla used this canard to alter prices on the same features, for example, as in Mr. Horowitz's matter, changing the base vehicle from a "Plus" to a non-Plus (thereby decreasing the battery range and capability and, at the same time, increasing the price of the base vehicle by an additional $10,000. This conduct satisfies the "fraudulent" element of UCL §17200.

### Tesla's Unlawful Business Acts and Practices

75.     Tesla deceived Plaintiff and potential California Subclass Members by representing particular vehicles for sale at a particular price, entering contracts with Plaintiff and potential

California Subclass Members for a particular price only to later breach each of those contracts on false pretenses.

76.     Tesla used misrepresentations and concealments of material facts to induce Plaintiff and potential Class Members to enter into contracts to purchase the Class Vehicles, in violation of UCL §17200. Had Tesla not unilaterally increased the price and changed the configuration of Class Vehicles, Plaintiff and potential California Subclass Members would not have incurred damages. Tesla's conduct caused and continues to cause economic harm to Plaintiff and potential Class Members.

77.     The misrepresentations and concealments by Tesla were "unlawful" business practices or acts under UCL §17200.

78.     Tesla has engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and California Subclass Class Members to judgment and equitable relief against Tesla. Pursuant to UCL §17203, Plaintiff and potential California Subclass Class Members seek an order requiring Tesla to immediately cease its unlawful, unfair, and fraudulent business practices, and requiring Tesla to correct its actions.

### **THIRD CLAIM FOR RELIEF**

**Breach of the Covenant of Good Faith and Fair Dealing**

***(On Behalf of Plaintiff and Members of Nationwide Class and the California Subclass)***

79.     Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

80.     Plaintiff brings this clam on behalf of himself and on behalf of potential Class Members.

81.     Every contract has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of the contract's express terms.

82.     Plaintiff and potential Class Members have complied with and performed all conditions of the contract.

83.     Tesla breached the implied covenant of good faith and fair dealing by using pretense and deception to alter the price of already ordered and contractually agreed upon vehicles.

84.     Tesla acted in bad faith and/or with malicious motive in denying Plaintiff and potential Class Members the full benefit of their bargain as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**

**Violation of the Consumer Legal Remedies Act – Injunctive Relief and Damages**

***(On Behalf of Plaintiff and Members of the California Subclass)***

85.     Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

86.     Plaintiff brings this cause of action on behalf of himself and on behalf of the potential California Subclass Members.

87.     Defendant Tesla is a "Person" pursuant to California Civil Code section 1761(c).

88.     Plaintiff and potential California Subclass Members are "consumers pursuant to California Civil Code section 1761(d).

89.     The purchases and/or leases of Class Vehicles a constitute transactions as defined by California Civil Code section 1761(e).

90.     The Class Vehicles constitute "goods" as defined by California Civil Code sections 1761(a) and (b).

91.     Plaintiffs and potential California Subclass Members purchased or leased the Class Vehicles primarily for personal, family, and household purposes as set forth in California Civil Code section 1761(d).

92.     Tesla's misrepresentations, active concealment, failure to disclose, and omissions regarding the Class Vehicles violated the California Consumer Legal Remedies Act, codified at California Civil Code section1750 *et seq*., as follows:

93.     Tesla misrepresented the Class Vehicles had characteristics, benefits, or uses that they did not have. (Cal. Civ Code §1770(a)(5)):

a. Tesla misrepresented the Class Vehicles were of a particular standard, quality, or grade when they were of another. (Cal. Civ Code §1770(a)(7));

b. Tesla advertised and indeed entered into contracts with class members for the Class Vehicles with inability and intent not to sell or lease them as advertised. (Cal. Civ Code §1770(a)(9));

c. Tesla advertised and indeed entered into contracts for the class vehicles with the intent not to supply reasonably expectable demand and without notifying California Subclass members or the public of its inability to meet that supply; (Cal Civ. Code §1770(a)(10));

d. Tesla misrepresented the Motor Vehicle Orders conferred or involved rights, remedies, or obligations that the did not. (Cal. Civ Code §1770(a)(14)); and,

e. Tesla inserted an unconscionable provision in each revised contract for a higher price knowing that nothing changed other than the price.

94.    Tesla's unfair and deceptive acts or practices occurred repeatedly in the course of Tesla's course of trade and busines. These practices were material, capable of deceiving a substantial portion of the purchasing public, and as a result caused economic harm to purchasers and lessees of the Class Vehicles.

95.    The facts concealed and not disclosed by Tesla to Plaintiff and potential California Subclass Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase or lease a Class Vehicle. A reasonable consumer would consider that no real changes in the material properties of a vehicle should not lead to a substantial rise in price when said price and vehicle had been under contract.

96.    Plaintiff and potential California Subclass Members are reasonable consumers. They did not expect to enter into a contract only to be told by Tesla that the contract is being unilaterally modified. Reasonable consumes would also not expect Tesla to fraudulently deceive consumers for the reasons for the price changes.

///

///

97.     As a result of Tesla's misconduct as described herein, Plaintiff and potential California Subclass Members have been harmed and suffered actual damages in that orders for class vehicles have been altered and prices increased.

98.     As a direct and proximate result of Tesla's unfair and deceptive acts, omissions, concealment, and practices, Plaintiff and potential California Subclass Members have suffered, and will continue to suffer actual damages.

99.     Plaintiff and potential California Subclass Members are entitled to equitable relief and for enforcement of the terms of the original order and contract for sale or lease of a class vehicle at the original price.

100.    Pursuant to California Civil Code section 1780(a)(2), Plaintiff and potential California Subclass Members seek an injunction prohibiting the acts set forth herein which violate the Consumer Legal Remedies Act.

101.    Plaintiff seeks an order prohibiting Defendant Tesla, from engaging in the acts described in this Complaint and requiring Tesla to do the following:

a.  Cease all unilateral changes to motor vehicle orders and/or sales of Class Vehicles to any persons or entities;

b.  Inform all class members or potential class members that the altered sales or lease prices will not be in effect and that the original sales or lease prices will be honored; and,

c.  Refund all class members the difference between original order prices and subsequent altered sales/lease prices.

102.     Tesla acted with malice, oppression, and fraud toward Plaintiff and potential California Subclass Members within the meaning of California Civil Code section 3294.

103.    Pursuant to California Civil Code section1780(d), Plaintiff may recover attorney fees and costs according to proof at trial.

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, on behalf of himself and all others similarly situated, prays as follows:

1. For an award of actual, general, special, incidental, statutory, compensatory, and consequential damages on claims brought under California's Unfair Competition Law, breach of express and implied warranties under all relevant statutes, and breach of the implied covenant of good faith and fair dealing and in an amount to be proven at trial;

2. For a Temporary Restraining Order and a Preliminary Injunction:

   a. enjoining Tesla from continuing to sell Class Vehicles containing the battery system defect to its California Tesla dealerships;

   b. directing Tesla to issue a "Stop Sale" order to its California dealerships prohibiting the sales of any Class Vehicle to any member of the public;

   c. directing Tesla to take down advertisements for Class Vehicles or otherwise make abundantly clear to the general public on Tesla's website and other advertising that Class Vehicles are subject to a defect that is not yet repairable that makes the electric portion of the vehicle not only effectively functionless but dangerous;

   d. directing Tesla to toll the express warranty period for all Class Vehicles to cover, at a minimum, the time period during which the Class Vehicles have been unable to operate with all functions consistent with *California Civil Code* §1795.6;

   e. Directing Tesla to repair Class Vehicles within 30-days of presentation pursuant to *California Civil Code* §1793.4 or offer a repurchase of said vehicles pursuant to *California Civil Code* §1794.

3. For an order certifying this action as a class action;

4. For an order appointing Plaintiff as Class Representative and his counsel as Class Counsel;

5. For attorney's fees;

6. For prejudgment interest;

7. For costs of suit;

8. For an order requiring Tesla to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate; and,

9. For any and all other relief the court may deem necessary and just.

Dated: December 14, 2021                    **O'CONNOR LAW GROUP, P.C.**


                                            ___/s/ Mark O'Connor_____
                                            Mark O'Connor, Esq. (SBN 157680)
                                            Larry S. Castruita, Esq. (SBN 279263)
                                            Attorneys for Plaintiff:
                                            DANIEL AARON HOROWITZ


Dated: December 14, 2021                    **WIRTZ LAW APC**


                                            ___/s/ Richard M. Wirtz_____
                                            Richard M. Wirtz, Esq. (SBN 137812)
                                            Attorneys for Plaintiff:
                                            DANIEL AARON HOROWITZ


Dated: December 14, 2021                    **REALLAW APC**


                                            ___/s/ Michael J. Hassen_____
                                            Michael J. Hassen, Esq. (SBN 124823)
                                            Attorneys for Plaintiff:
                                            DANIEL AARON HOROWITZ

# EXHIBIT A



# Motor Vehicle Order Agreement

### Vehicle Configuration

**Customer**

Daniel Horowitz



| | |
|---|---|
| **Order Number** | RN113924080 |
| **Order Fee** | $100 |
| **Order placed with electronically accepted terms** | 10/07/2020 |

Price indicated does not include taxes and governmental fees, which will be calculated as your delivery date nears. You will be responsible for these additional taxes and fees.

| Description | Price (USD) |
|---|---|
| Mode X Long Range P us | $79,990 |
| M dn ght S ver Meta c | $1,500 |
| 20" S ver Whee s | nc uded |
| A B ack Prem um nter or w th F gured Ash Wood Décor | nc uded |
| S x Seat nter or | $6,500 |
| Autop ot | nc uded |
| Fu Se f-Dr v ng Capab ty | $8,000 |
| Pay-as-you-go Supercharg ng | nc uded |
| **Subtotal** | **$95,990** |
| **Destination and Documentation Fee** | **$1,200** |
| **Order Fee** | **$100** |
| **Total** | **$97,290** |



## Motor Vehicle Order Agreement
### Terms & Conditions

**Documentation**  You  Mo o  Veh c e O de  Ag eemen  ( he  Ag eemen  ) s made up of  he fo ow ng documen s

1. **Vehicle Configuration**  The Veh c e Configu ation desc bes  he veh c e ha   ou configu ed and o de ed  nc ud ng p c ng (exc ud ng  axes and offic a o  gove nmen  fees)

2. **Final Price Sheet**:  The F na  Pr ce Sheet w  be prov ded to you as your de ve ry date nears.  t w   nc ude fina  pr c ng based on your fina  Veh c e Configuration and w   nc ude taxes and offic a or governmenta fees.

3. **Terms & Conditions**  These Te ms & Cond tions a e effective as of  he da e  ou p ace  ou  o de  and make  ou  O de  ee ( he  O de  Da e )

**Agreement to Purchase.**  You agree to purchase the veh c e (the "Veh c e") descr bed  n your Veh c e Configuration from Tes a,  nc. or  ts affi ate ("we," "us" or "our"), pursuant to the terms and cond tions of th s Agreement. Your Veh c e s pr ced and configured based on features and options ava ab e at the time of order and you can confirm ava ab  ty w th a Tes a representative. Options, features or hardware re eased or changed after you p ace your order may not be  nc uded  n or ava ab e for your Veh c e.  f you are purchas ng a used Veh c e,  t may exh b t s gns of norma  wear and tear n  ne w th  ts respective age and m eage.

**Purchase Price, Taxes and Official Fees.**  The purchase pr ce of the Veh c e s  nd cated  n your Veh c e Configuration. Th s purchase pr ce does not  nc ude taxes and offic a or government fees, wh ch cou d amount to up to 10% or more of the Veh c e purchase pr ce. Because these taxes and fees are constant y chang ng and w  depend on many factors, such as where you reg ster the Veh c e, they w  be ca cu ated c oser to the time of de very and  nd cated on your F na  Pr ce Sheet. You are respons b e for pay ng these add tiona  taxes and fees.  f Tes a s reg ster ng your Veh c e, th s w  be due when you pay the purchase pr ce.  f you are reg ster ng your Veh c e n a se f-reg stration state, the sa es tax and state-app cab e reg stration fees may be due at time of reg stration.  f you present a check for any payment, we may process the payment as a norma  check transaction, or we may use nformation from your check to make a one-time e ectron c fund transfer from your account,  n wh ch case your bank account w  reflect th s transaction as an E ectron c Fund Transfer.  f you are purchas ng a used Veh c e, your Order Depos t w  be app ed to your Purchase Pr ce.

**Order Process; Cancellation; Changes.**  After you subm t your comp eted order, we w  beg n the process of prepar ng and coord nating your Veh c e de very. At th s po nt, you agree that any pa d Order Fee, Order Depos t and Transportation fee have been earned.  f you cance  your order or breach th s Agreement and we cance  your order, you agree that we may reta n as  qu dated damages the Order Fee, Order Depos t and Transportation Fee, to the extent not otherw se proh b ted by aw. You acknow edge that the Order Fee, Order Depos t and Transportation Fee are a fa r and reasonab e estimate of the actua  damages we have ncurred or may ncur n transporting, remarketing, and rese ng the Veh c e, costs wh ch are otherw se mpracticab e or extreme y d fficu t to determ ne.  f you make changes to your order, you may be sub ect to potentia  pr ce ncreases for any pr c ng ad ustments made s nce your or g na  Order Date. Any changes made by you to your Veh c e Configuration, nc ud ng changes to the de very ocation or estimated de very date, w  be reflected n a subsequent Veh c e Configuration that w  form part of th s Agreement. The Order Fee, Order Depos t, Transportation Fee and th s Agreement are not made or entered nto n antic pation of or pend ng any cond tiona  sa e contract.

**Model S Plaid Order Process; Cancellation; Changes.**  After you subm t your comp eted order, and the options you se ected become ava ab e n production, we w  n ify you to comp ete the configuration of your Veh c e. We w  then ssue you the Veh c e Configuration and F na  Pr ce Sheet based on your fina configuration. Unti  you comp ete your Veh c e configuration, your order w  be cons dered a pre-order and you may cance  t at any time, n wh ch case you w  rece ve a fu  refund of any pa d Order Depos t.  f you cance  your order o you breach th s Agreement and we cance  your order after you comp ete your Veh c e configuration, you agree that the Order Depos t has been earned and that we may reta n the Order Depos t as qu dated damages, to the extent not otherw se proh b ted by aw. You acknow edge that the Order Depos t s a fa r and reasonab e estimate of the actua  damages we have ncurred or may ncur n transporting, remarketing, and rese ng the Veh c e, costs wh ch are otherw se mpracticab e or extreme y d fficu t to determ ne.  f you make changes to your order, you may be sub ect to potentia  pr ce ncreases for any pr c ng ad ustments made s nce your or g na  Order Date. Any changes made by you to your Veh c e Configuration, nc ud ng changes to the de very ocation or estimated de very date, w  be reflected n a subsequent Veh c e Configuration that w  form part of th s Agreement. The Order Depos t and th s Agreement are not made or entered nto n antic pation of or pend ng any cond tiona  sa e contract.

**Delivery; Transfer of Title.**  f you are p ck ng up your Veh c e n a state where we are  censed to se  the Veh c e, we w  notify you of when we expect your Veh c e to be ready for de very at your oca  Tes a De very Center, or other ocation as we may agree to. You agree to schedu e and take de very of your Veh c e w th n three (3) days of th s date.  f you do not respond to our notification or are unab e to take de very w th n the spec fied per od, your Veh c e may be made ava ab e for sa e to other customers. For new veh c es,  f you do not take de very w th n s x (6) months of our first attempt to notify you, Tes a may cance  your order and keep your Order Fee.

 f you w sh to p ck up or take de very of your Veh c e n a state where we are not  censed to se  the Veh c e, or f you and Tes a otherw se agree, Tes a w  , on your beha f, coord nate the sh pment of your Veh c e to you, genera y from our factory n Ca forn a or another state where we are  censed to se  the Veh c e. n such a case, you agree that th s s a sh pment contract under wh ch Tes a w  coord nate the sh pp ng of the Veh c e to you v a a th rd-party common carr er or other mode of transport. You agree that de very of the Veh c e, nc ud ng the transfer of tit e and r sk of oss to you, w  occur at the time your Veh c e s oaded onto the transport ( .e., FOB sh pp ng po nt). Dur ng such trans t, your Veh c e w  be nsured at no cost to you, and you w  be the benefic ary of any c a ms for damage to the Veh c e or osses occurr ng wh e the Veh c e s n trans t. To secure your fina  payment and performance under the terms of th s Agreement, we w  reta n a secur ty nterest n the Veh c e and a  proceeds therefrom unti  your ob gations have been fu f ed.

 f you choose to p ck up or take de very of your Veh c e n a state n wh ch we are not  censed to se  the Veh c es, the Veh c e may be de vered or sh pped to you from a state n wh ch Tes a kew se does not have a  cense to se  the Veh c e. n such a case, you agree that the sa e s transacted, and ega tit e to the Veh c e transfers to you, n the State of Ca forn a, at the ater of the time that (i) you make your fina  payment to Tes a n Ca forn a or ( ) Tes a approves your purchase from a sa es or de very ocation n Ca forn a ( f app cab e).

The estimated de very date of your Veh c e,  f prov ded, s on y an estimate as we do not guarantee when your Veh c e w  actua y be de vered. Your actua de very date s dependent on many factors, nc ud ng your Veh c e's configuration and manufactur ng ava ab ty.



**Premium Connectivity.** A trial of Premium Connectivity will be included following delivery of the Vehicle. Once this trial is over as detailed at www.tesla.com/support/connectivity, you may subscribe to Premium Connectivity or your Vehicle will return to Standard Connectivity. Features included in Premium Connectivity are subject to change and may be limited or unavailable due to Obsolete Hardware. You understand and agree that the cellular or other network needed for any Connectivity is provided by your local telecommunications company and other external providers, and that we are not able for any parts, software, upgrades or any other costs (including labor) needed to use or maintain network connectivity or compatibility with any features or services external supplied to the Vehicle. Any connectivity issues (including for quality, functionality or coverage) or gaps in service unrelated to a hardware failure or failure are not covered by Tesla warranties.

**Obsolete Hardware and Future Firmware Updates.** The Vehicle will regularly receive over-the-air software updates that add new features and enhance existing ones over Wi-Fi. Future software updates may not be provided for your Vehicle, or may not include a existing or new features or functionality, due to your Vehicle's age, configuration, data storage capacity or parts, after the expiration of your Warranty. We are not able for any parts or labor or any other cost needed to update or retrofit the Vehicle so that it may receive these updates, or any Vehicle issues occurring after the installation of any software updates due to obsolete, malfunctioning (except as covered by your Warranty) or damaged hardware.

**Privacy Policy; Payment Terms for Services; Supercharger Fair Use Policy.** Tesla's Customer Privacy Policy, Payment Terms for Services and Supercharger Fair Use Policy are incorporated into this Agreement and can be viewed at www.tesla.com/about/legal.

**Warranty.** You will receive the Tesla New Vehicle Limited Warranty or the Tesla Used Vehicle Limited Warranty, as applicable, at or prior to the time of Vehicle delivery or pickup. You may also obtain a written copy of your warranty from us upon request or from our website.

**Limitation of Liability.** We are not able for any incidental, special or consequential damages arising out of this Agreement. Your sole and exclusive remedy under this Agreement will be limited to reimbursement of your Order Fee, Order Deposit and Transportation Fee.

---

**Agreement to Arbitrate.** Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates, (together "Tesla").

If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolutions@tesla.com.

If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products.

We will pay a AAA fees for any arbitration, which will be held in the city or county of your residence. To earn more about the Rules and how to begin an arbitration, you may call any AAA office or go to www.adr.org.

The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.

If you prefer, you may instead take an individual dispute to small claims court.

You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc. P.O. Box 15430 Fremont, CA 94539-7970, stating your name, Vehicle identification Number, and intent to opt out of the arbitration provision. If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract.

---

**No Resellers; Discontinuation; Cancellation.** Tesla and its affiliates sell cars directly to end-consumers, and we may unilaterally cancel any order that we believe has been made with a view toward resale of the Vehicle or that has otherwise been made in bad faith. We may also cancel your order and refund your Order Fee, Order Deposit and Transportation Fee if we discontinue a product, feature or option after the time you place your order or if we determine that you are acting in bad faith.

**Default and Remedies.** You will be in default of this Agreement if you provide false or misleading information in your order, or do anything else the law says is a default. If you are in default, we may, after any legal required notice or waiting period: (i) do anything to protect our interest in the Vehicle, including repossessing the Vehicle using legally permitted means, (ii) locate and disable the Vehicle electronically using our remote dynamic vehicle connection described in our Privacy Policy, (iii) sue you for damages or to get the Vehicle back, and/or (v) charge you for amounts we spend taking these actions.

**Governing Law; Integration; Assignment.** Except as provided below, the terms of this Agreement are governed by, and to be interpreted according to, the laws of the State in which we are licensed to sell motor vehicles that is nearest to your address indicated on your Vehicle Configuration. Prior agreements, oral statements, negotiations, communications or representations about the Vehicle sold under this Agreement are superseded by this Agreement. Terms relating to the purchase not expressly contained herein are not binding. We may assign this Agreement at our discretion to one of our affiliated entities.

**State-Specific Provisions.** You acknowledge that you have read and understand the provisions applicable to you in the State-Specific Provisions attachment to this Agreement.

This Agreement is entered into and effective as of the date you accept this Agreement, by electronic means or otherwise. By confirming and accepting this Agreement, you agree to the terms and conditions of this Agreement.



**State Specific Provisions**

---

For **NEW YORK** res dents:  f the Veh c e  s not de vered  n accordance w th the Agreement w th n 30 days fo ow ng the estimated de very date, you have the r ght to cance  the Agreement and rece ve a fu  refund, un ess the de ay  n de very  s attr butab e to you.

For **MASSACHUSETTS** res dents: ATTENT ON PURCHASER: A  veh c es are WARRANTED as a matter of state  aw. They must be fit to be dr ven safe y on the roads and must rema n  n good runn ng cond t on for a reasonab e per od of time.  f you have s gn ficant prob ems w th the Veh c e or  f t w  not pass a Massachusetts  nspection, you shou d notify us  mmed ate y. We may be requ red to fix the car or refund your money. TH S WARRANTY  S  N ADD T ON TO ANY OTHER WARRANTY G VEN BY US.

For **MICHIGAN** res dents and purchasers: The terms of th s Agreement are governed by, and are to be  nterpreted accord ng to, M ch gan  aw. The sa e of your veh c e w   be transacted outs de of M ch gan, and  n a state  n wh ch Tes a has a  cense to se   veh c es, as exp a ned  n the body of the Agreement.

For **WASHINGTON, D.C.** res dents:

NOT CE TO PURCHASER

 F, AFTER A REASONABLE NUMBER OF ATTEMPTS, THE MANUFACTURER,  TS AGENT, OR AUTHOR ZED DEALER  S UNABLE TO REPA R OR CORRECT ANY NON-CONFORM TY, DEFECT, OR COND T ON WH CH RESULTS  N S GN F CANT  MPA RMENT OF THE MOTOR VEH CLE, THE MANUFACTURER, AT THE OPT ON OF THE CONSUMER, SHALL REPLACE THE MOTOR VEH CLE W TH A COMPARABLE MOTOR VEH CLE, OR ACCEPT RETURN OF THE MOTOR VEH CLE FROM THE CONSUMER AND REFUND TO THE CONSUMER THE FULL PURCHASE PR CE,  NCLUD NG ALL SALES TAX, L CENSE FEES, REG STRAT ON FEES, AND ANY S M LAR GOVERNMENT CHARGES.  F YOU HAVE ANY QUEST ONS CONCERN NG YOUR R GHTS, YOU MAY CONTACT THE DEPARTMENT OF CONSUMER AND REGULATORY AFFA RS.

Se er certifies that the  nformation conta ned  n the  tem zation of the purchase pr ce,  nc ud ng the Veh c e Configuration, and requ red by Chapter 3 (Buy ng, Se  ng and F nanc ng Motor Veh c es) of T t e 16 of the Code of D.C. Mun c pa  Regu ations,  s true to the best of our know edge.

For **RHODE ISLAND** res dents: Rhode  s and  aw requ res that a  motor veh c es so d at reta   must be  n such cond t on as to pass a State safety  nspection at the time of sa e so as to protect consumers.

# EXHIBIT B



# Motor Vehicle Order Agreement

### Vehicle Configuration

**Customer**

Daniel Horowitz



| **Order Number** | RN113924080 |
| --- | --- |
| **Order Payment** | $100 |
| **Order placed with electronically accepted terms** | 05/14/2021 |

**Price indicated does not include taxes and governmental fees, which will be calculated as your delivery date nears. You will be responsible for these additional taxes and fees.**

| Description | Price (USD) |
| --- | --- |
| Mode  X Long Range | $89,990 |
| M dn ght S ver Meta  c | $1,500 |
| 20" Cyberstream Whee s | nc uded |
| A  B ack Prem um  nter or w th Ebony Décor | nc uded |
| S x Seat  nter or | $6,500 |
| Yoke Steer ng Whee | nc uded |
| Autop ot | nc uded |
| Fu  Se f-Dr v ng Capab  ty | $10,000 |
| Pay-as-you-go Supercharg ng | nc uded |
| **Subtotal** | **$107,990** |
| **Destination and Documentation Fee** | **$1,200** |
| **Total** | **$109,190** |



## Motor Vehicle Order Agreement
### Terms & Conditions

**Documentation** You  Mo o  Veh c e O de  Ag eemen  ( he  Ag eemen  ) s made up of  he fo ow ng documen s

1. **Vehicle Configuration**   The Veh c e Configu ation desc bes  he veh c e ha   ou configu ed and o de ed  nc ud ng p c ng (exc ud ng  axes and offic a o  gove nmen  fees)

2. **Final Price Sheet:**  The F na  Pr ce Sheet w  be prov ded to you as your de very date nears. t w   nc ude fina  pr c ng based on your fina  Veh c e Configuration and w   nc ude taxes and offic a or governmenta  fees.

3. **Terms & Conditions**   These Te ms & Cond tions a e effective as of  he da e  ou p ace  ou  o de  and make  ou  O de   ee ( he  O de  Da e )

**Agreement to Purchase.**  You agree to purchase the veh c e (the "Veh c e") descr bed  n your Veh c e Configuration from Tes a,  nc. or  ts affi ate ("we," "us" or "our"), pursuant to the terms and cond tions of th s Agreement. Your Veh c e s pr ced and configured based on features and options ava ab e at the time of order and you can confirm ava ab ty w th a Tes a representative. Options, features or hardware re eased or changed after you p ace your order may not be  nc uded  n or ava ab e for your Veh c e.  f you are purchas ng a used Veh c e,  t may exh b t s gns of norma  wear and tear n  ne w th  ts respective age and m eage.

**Purchase Price, Taxes and Official Fees.**  The purchase pr ce of the Veh c e s  nd cated  n your Veh c e Configuration. Th s purchase pr ce does not  nc ude taxes and offic a or government fees, wh ch cou d amount to up to 10% or more of the Veh c e purchase pr ce. Because these taxes and fees are constant y chang ng and w  depend on many factors, such as where you reg ster the Veh c e, they w  be ca cu ated c oser to the time of de very and nd cated on your F na  Pr ce Sheet. You are respons b e for pay ng these add tiona  taxes and fees.  f Tes a s reg ster ng your Veh c e, th s w  be due when you pay the purchase pr ce.  f you are reg ster ng your Veh c e  n a se f-reg stration state, the sa es tax and state-app cab e reg stration fees may be due at time of reg stration.  f you present a check for any payment, we may process the payment as a norma  check transaction, or we may use  nformation from your check to make a one-time e ectron c fund transfer from your account,  n wh ch case your bank account w  reflect th s transaction as an E ectron c Fund Transfer.  f you are purchas ng a used Veh c e, your Order Depos t w  be app ed to your Purchase Pr ce.

**Order Process; Cancellation; Changes.**  After you subm t your comp eted order, we w  beg n the process of prepar ng and coord nating your Veh c e de very. At th s po nt, you agree that any pa d Order Fee, Order Depos t and Transportation fee have been earned.  f you cance  your order or breach th s Agreement and we cance  your order, you may reta n as  qu dated damages the Order Fee, Order Depos t and Transportation Fee, to the extent not otherw se proh b ted by aw. You acknow edge that the Order Fee, Order Depos t and Transportation Fee are a fa r and reasonab e estimate of the actua  damages we have ncurred or may  ncur n transporting, remarketing, and rese ng the Veh c e, costs wh ch are otherw se  mpracticab e or extreme y d fficu t to determ ne.  f you make changes to your order, you may be sub ect to potentia  pr ce ncreases for any pr c ng ad ustments made s nce your or g na  Order Date. Any changes made by you to your Veh c e Configuration, nc ud ng changes to the de very ocation or estimated de very date, w  be reflected  n a subsequent Veh c e Configuration that w  form part of th s Agreement. The Order Fee, Order Depos t, Transportation Fee and th s Agreement are not made or entered nto n antic pation of or pend ng any cond tiona  sa e contract.

**Model S Plaid+ Order Process; Cancellation; Changes.**  After you subm t your comp eted order, and the options you se ected become ava ab e n production, we w  nv te you to comp ete the configuration of your Veh c e. We w  then  ssue you the Veh c e Configuration and F na  Pr ce Sheet based on your fina  configuration. Unti  you comp ete your Veh c e configuration, your order w  be cons dered a pre-order and you may cance  t at any time, n wh ch case you w  rece ve a fu  refund of any pa d Order Depos t.  f you cance  your order or you breach th s Agreement and we cance  your order after you comp ete your Veh c e configuration, you agree that the Order Depos t has been earned and that we may reta n the Order Depos t as  qu dated damages, to the extent not otherw se proh b ted by aw. You acknow edge that the Order Depos t s a fa r and reasonab e estimate of the actua  damages we have ncurred or may  ncur n transporting, remarketing, and rese ng the Veh c e, costs wh ch are otherw se  mpracticab e or extreme y d fficu t to determ ne.  f you make changes to your order, you may be sub ect to potentia  pr ce ncreases for any pr c ng ad ustments made s nce your or g na  Order Date. Any changes made by you to your Veh c e Configuration, nc ud ng changes to the de very ocation or estimated de very date, w  be reflected  n a subsequent Veh c e Configuration that w  form part of th s Agreement. The Order Depos t and th s Agreement are not made or entered nto n antic pation of or pend ng any cond tiona  sa e contract.



**Delivery; Transfer of Title.**  If you are picking up your Vehicle in a state where we are licensed to sell the Vehicle, we will notify you of when we expect your Vehicle to be ready for delivery at your local Tesla Delivery Center, or other location as we may agree to. You agree to schedule and take delivery of your Vehicle within three (3) days of this date. If you do not respond to our notification or are unable to take delivery within the specified period, your Vehicle may be made available for sale to other customers. For new vehicles, if you do not take delivery within three (3) months of our first attempt to notify you, Tesla may cancel your order and keep your Order Fee.

 If you wish to pick up or take delivery of your Vehicle in a state where we are not licensed to sell the Vehicle, or if you and Tesla otherwise agree, Tesla will, on your behalf and at your cost, coordinate the shipment of your Vehicle to you, generally from our factory in California or another state where we are licensed to sell the Vehicle. In such a case, you agree that this is a shipment contract under which Tesla will coordinate the shipping of the Vehicle to you via a third-party common carrier or other mode of transport. You agree that delivery of the Vehicle, including the transfer of title and risk of loss to you, will occur at the time your Vehicle is loaded onto the transport (i.e., FOB shipping point). During such transit, your Vehicle will be insured at no cost to you, and you will be the beneficiary of any claims for damage to the Vehicle or losses occurring while the Vehicle is in transit. To secure your final payment and performance under the terms of this Agreement, we will retain a security interest in the Vehicle and all proceeds therefrom until your obligations have been fulfilled.

 If you choose to pick up or take delivery of your Vehicle in a state in which we are not licensed to sell the Vehicles, the Vehicle may be delivered or shipped to you from a state in which Tesla likewise does not have a license to sell the Vehicles. In such a case, you agree that the sale is transacted, and legal title to the Vehicle transfers to you, in the State of California, at the later of the time that (I) you make your final payment to Tesla in California or ( ) Tesla approves your purchase from a sales or delivery location in California (if applicable).

The estimated delivery date of your Vehicle, if provided, is only an estimate as we do not guarantee when your Vehicle will actually be delivered. Your actual delivery date is dependent on many factors, including your Vehicle's configuration and manufacturing availability.

**Incentives.** Tesla makes no promises, warranties or guarantees regarding your eligibility for any incentives, rebates and tax credits (the " incentives") related to the Vehicle. If Tesla has credited your Purchase Price for the amount of an incentive, but you do not qualify for the incentive at no fault of Tesla's, you shall reimburse Tesla for the amount of the credit.

**Premium Connectivity.**  A trial of Premium Connectivity will be included following delivery of the Vehicle. Once this trial is over as detailed at www.tesla.com/support/connectivity, you may subscribe to Premium Connectivity or your Vehicle will return to Standard Connectivity. Features included in Premium Connectivity are subject to change and may be limited or unavailable due to Obsolete Hardware. You understand and agree that the cellular or other network needed for any Connectivity is provided by your local telecommunications company and other external providers, and that we are not able for any parts, software, upgrades or any other costs (including labor) needed to use or maintain network connectivity or compatibility with any features or services externally supplied to the Vehicle. Any connectivity issues (including for quality, functionality or coverage) or gaps in service unrelated to a hardware fault or failure are not covered by Tesla warranties.

**Obsolete Hardware and Future Firmware Updates.**  The Vehicle will regularly receive over-the-air software updates that add new features and enhance existing ones over Wi-Fi. Future software updates may not be provided for your Vehicle, or may not include a existing or new features or functionality, due to your Vehicle's age, configuration, data storage capacity or parts, after the expiration of your Warranty. We are not able for any parts or labor or any other cost needed to update or retrofit the Vehicle so that it may receive these updates, or any Vehicle issues occurring after the installation of any software updates due to obsolete, malfunctioning (except as covered by your Warranty) or damaged hardware.

**Privacy Policy; Payment Terms for Services; Supercharger Fair Use Policy.**  Tesla's Customer Privacy Policy Payment Terms for Services and Supercharger Fair Use Policy are incorporated into this Agreement and can be viewed at www.tesla.com/about/legal.

**Warranty.**  You will receive the Tesla New Vehicle Limited Warranty or the Tesla Used Vehicle Limited Warranty, as applicable, at or prior to the time of Vehicle delivery or pickup. You may also obtain a written copy of your warranty from us upon request or from our website.

**Limitation of Liability.**  We are not able for any incidental, special or consequential damages arising out of this Agreement. Your sole and exclusive remedy under this Agreement will be limited to reimbursement of your Order Fee, Order Deposit and Transportation Fee.



**Agreement to Arbitrate.** P ease carefu y read th s prov s on, wh ch app es to any d spute between you and Tes a, nc. and ts affi ates, (together "Tes a").

f you have a concern or d spute, p ease send a wr tten notice descr b ng t and your des red reso ution to resolutions@tes a.com.

f not reso ved w th n 60 days, you agree that any d spute ar s ng out of or re ating to any aspect of the re ationsh p between you and Tes a w not be dec ded by a udge or ury but nstead by a s ng e arb trator n an arb tration adm n stered by the Amer can Arb tration Assoc ation (AAA) under ts Consumer Arb tration Ru es. Th s nc udes c a ms ar s ng before th s Agreement, such as c a ms re ated to statements about our products.

We w pay a AAA fees for any arb tration, wh ch w be he d n the c ty or county of your res dence. To earn more about the Ru es and how to beg n an arb tration, you may ca any AAA office or go to www.adr.org.

The arb trator may on y reso ve d sputes between you and Tes a, and may not conso date c a ms w thout the consent of a parties. The arb trator cannot hear c ass or representative c a ms or requests for re ef on beha f of others purchas ng or eas ng Tes a veh c es. n other words, you and Tes a may br ng c a ms aga nst the other on y n your or ts nd v dua capac ty and not as a p a ntiff or c ass member n any c ass or representative action. f a court or arb trator dec des that any part of th s agreement to arb trate cannot be enforced as to a particu ar c a m for re ef or remedy, then that c a m or remedy (and on y that c a m or remedy) must be brought n court and any other c a ms must be arb trated.

f you prefer, you may nstead take an nd v dua d spute to sma c a ms court.

You may opt out of arb tration w th n 30 days after s gn ng th s Agreement by send ng a etter to: Tes a, nc. P.O. Box 15430 Fremont, CA 94539-7970, stating your name, Veh c e dentification Number, and ntent to opt out of the arb tration prov s on. f you do not opt out, th s agreement to arb trate overr des any d fferent arb tration agreement between us, nc ud ng any arb tration agreement n a ease or finance contract.

**No Resellers; Discontinuation; Cancellation.** Tes a and ts affi ates se cars d rect y to end-consumers, and we may un atera y cance any order that we be eve has been made w th a v ew toward resa e of the Veh c e or that has otherw se been made n bad fa th. We may a so cance your order and refund your Order Fee, Order Depos t and Transportation Fee f we d scontinue a product, feature or option after the time you p ace your order or f we determ ne that you are acting n bad fa th.

**Default and Remedies.** You w be n defau t of th s Agreement f you prov de fa se or m s ead ng nformation n your order, or do anyth ng e se the aw says s a defau t. f you are n defau t, we may, after any ega y requ red notice or wa ting per od: ( ) do anyth ng to protect our nterest n the Veh c e, nc ud ng repossess ng the Veh c e us ng ega y perm tted means, ( ) ocate and d sab e the Veh c e e ectron ca y us ng our remote dynam c veh c e connection descr bed n our Pr vacy Po cy, ( ) sue you for damages or to get the Veh c e back, and/or (v) charge you for amounts we spend tak ng these actions.

**Governing Law; Integration; Assignment.** Except as prov ded be ow, the terms of th s Agreement are governed by, and to be nterpreted accord ng to, the aws of the State n wh ch we are censed to se motor veh c es that s nearest to your address nd cated on your Veh c e Configuration. Pr or agreements, ora statements, negotiations, commun cations or representations about the Veh c e so d under th s Agreement are superseded by th s Agreement. Terms re ating to the purchase not express y conta ned here n are not b nd ng. We may ass gn th s Agreement at our d scretion to one of our affi ated entities.

**State-Specific Provisions.** You acknow edge that you have read and understand the prov s ons app cab e to you n the State-Spec fic Prov s ons attachment to th s Agreement.

Th s Agreement s entered nto and effective as of the date you accept th s Agreement, by e ectron c means or otherw se. By confirm ng and accepting th s Agreement, you agree to the terms and cond tions of th s Agreement.



**State Specific Provisions**

---

For **NEW YORK** res dents:  f the Veh c e  s not de vered  n accordance w th the Agreement w th n 30 days fo ow ng the estimated de very date, you have the r ght to cance  the Agreement and rece ve a fu  refund, un ess the de ay  n de very s attr butab e to you.

For **MASSACHUSETTS** res dents: ATTENT ON PURCHASER: A  veh c es are WARRANTED as a matter of state aw. They must be fit to be dr ven safe y on the roads and must rema n n good runn ng cond t on for a reasonab e per od of time.  f you have s gn ficant prob ems w th the Veh c e or  f t w not pass a Massachusetts nspection, you shou d notify us mmed ate y. We may be requ red to fix the car or refund your money. TH S WARRANTY  S N ADD T ON TO ANY OTHER WARRANTY G VEN BY US.

For **MICHIGAN** res dents and purchasers: The terms of th s Agreement are governed by, and are to be nterpreted accord ng to, M ch gan aw. The sa e of your veh c e w  be transacted outs de of M ch gan, and  n a state n wh ch Tes a has a  cense to se  veh c es, as exp a ned  n the body of the Agreement.

For **WASHINGTON, D.C.** res dents:

NOT CE TO PURCHASER

 F, AFTER A REASONABLE NUMBER OF ATTEMPTS, THE MANUFACTURER,  TS AGENT, OR AUTHOR ZED DEALER  S UNABLE TO REPA R OR CORRECT ANY NON-CONFORM TY, DEFECT, OR COND T ON WH CH RESULTS  N S GN F CANT  MPA RMENT OF THE MOTOR VEH CLE, THE MANUFACTURER, AT THE OPT ON OF THE CONSUMER, SHALL REPLACE THE MOTOR VEH CLE W TH A COMPARABLE MOTOR VEH CLE, OR ACCEPT RETURN OF THE MOTOR VEH CLE FROM THE CONSUMER AND REFUND TO THE CONSUMER THE FULL PURCHASE PR CE, NCLUD NG ALL SALES TAX, L CENSE FEES, REG STRAT ON FEES, AND ANY S M LAR GOVERNMENT CHARGES.  F YOU HAVE ANY QUEST ONS CONCERN NG YOUR R GHTS, YOU MAY CONTACT THE DEPARTMENT OF CONSUMER AND REGULATORY AFFA RS.

Se er certifies that the nformation conta ned n the tem zation of the purchase pr ce, nc ud ng the Veh c e Configuration, and requ red by Chapter 3 (Buy ng, Se ng and F nanc ng Motor Veh c es) of T t e 16 of the Code of D.C. Mun c pa Regu ations, s true to the best of our know edge.

For **RHODE ISLAND** res dents: Rhode s and aw requ res that a  motor veh c es so d at reta  must be n such cond t on as to pass a State safety nspection at the time of sa e so as to protect consumers.